Thank you, Your Honor. Michael Wall on behalf of the appellants, most particularly Brian Fitzgerald, who was the attorney who was involved in this matter, we thank you for your time today and the opportunity to address you. I have a couple of questions. I took legal ethics in 1968, I think it was, and at that time the criminal statutes for barratry, champerty and maintenance were in the process of being abrogated by various states. The ethics were still clear that it was unethical to accept a referral fee and that it was unethical to agree to pay your clients litigation expenses. I understand that now those crimes are off the books in both jurisdictions. It is ethical to accept a referral fee in both jurisdictions. It used to be unethical to pay or accept a referral fee. And the two jurisdictions differ in that it's ethical to agree to bear litigation expenses in Nevada, but it's unethical in New York. Is that right so far? I believe that at the time that this matter happened, it was unethical in New York to agree to bear litigation costs, but that has been changed now in New York. But at the relevant time, it was unethical in New York to agree to bear the costs. In Nevada, that's my understanding. I hope that's right. I know that in Nevada that you can agree to bear the costs in a contingent agreement. And also as far as the ethics of a referral fee are concerned, it is ethical in Nevada and that was a determination that was made early on in this case and was a part of the first appeal, but isn't an issue in this case. There's only one issue. As far as we're concerned, there's nothing unethical about any of this, that any of the lawyers did. That's correct. Pay a referral fee, agreeing to receive a referral fee, claiming a referral fee, agreeing in Nevada to pay the client's costs without seeking reimbursement, seeking reimbursement for the costs in New York. Everything done was ethical, so we should disregard those ethical aspects. Yes, Your Honor. And I was surprised that that argument was raised again in the brief, the ethical argument, because it was disposed of early on. As a matter of fact, it was a major issue at the beginning. Mr. Crockett had raised that issue with a motion to dismiss and the Judge Prowe had ---- For anyone who took legal ethics back when they were different, it's the first thing you think of when you start reading this case. Well, Judge Prowe was going to submit that issue to the Nevada Supreme Court to see whether or not the fee-splitting arrangement that we had would be enforceable. And we had some proceedings about that, and then the parties came to an agreement that we would not submit that matter to the Nevada Supreme Court, and Judge Prowe made the ruling back then that the referral fee agreement would be enforceable in the State of Nevada. So that's really not an issue in this case at this time. As a matter of fact, that's one of just a list of red herrings that have been raised. Now, let me ask you, in quantum Merowith terms, there was that remark by, I think it started with Judge Berzon in oral argument in the previous case, that at the very least, Fitzgerald saved the client $100,000 by getting the contingent fee down from 40 percent to one-third. So ought to get a third of that, $33,000. I didn't follow it exactly because it could also be thought of as something that would be hourly rate if you got fired on a contingent fee representation, but be that as it may, I'm trying to figure out exactly what Fitzgerald should get. Should Fitzgerald get $33,000 plus the $5,000 or so for doing the work? Should Fitzgerald get the half of the third that was bargained for in the original arrangement? What should Fitzgerald get? What's the value of the deferral? The $33,000 was for the value that he brought to the case, and that includes the $5,000 for the time that he did. The language in the previous decision would be the customary local rate. Now, the judge never made a finding that I recall on what that was, but it looks as though in all likelihood, it's one-third of the one-third. Well, Your Honor, the only thing that's there's certainly some discretion in the I'm asking what is the customary referral rate in Nevada? The evidence that we have in this case is Mr. Crockett's testimony, his own testimony, that he would pay a one-third referral fee for a referral from anyone, and that's the evidence that we have. So it's one-third of the one-third. One-third. It's not a one-third contingency. One-third would go to the referring attorney. Yeah, one-third of the fee would go to the referring attorney. Would the quantum merit here be one-third plus one-third of the hundred, which would be, I think it was a $500,000 contingency. So would it be one-third of the 500 plus 33? That's our position, Your Honor. And the reason that we That's what I wanted to know. Your position is you should get one-third of the 500 plus the 33 and a third. Yes, Your Honor, because the Court already held in this case that the one, the 33,000 Understand, I wasn't asking the because yet. I just wanted to know what number. So what I should do for arithmetic is divide 500,000 by three and 100,000 by three and then add up those two results. That's one way that you could do it, Your Honor. The 33,000, which was that third, has already been affirmed by this Court, and that was for the value that was brought to the case by Mr. Fitzgerald. I don't know if we affirmed it or if we just sent it back for recalculation. Well, Your Honor's affirmed it, if I may address that, because No, no, don't. That's immaterial to me, whether we affirmed it or not. I mean, we're here as to whether this is enough. You say it's not enough, because that's what Judge Pro did when I went back. Let me ask you a different question. Quantum of Merit is usually conceptually easy. The question is how much is the service or the action performed by the plaintiff worth to the defendant? Here, the question is more subtle than that. The question might be how much is the referral worth to the defendant, that is to say to Crockett, or how much is the service he performed as a lawyer worth to the client? And those are two very different questions. He saved the client $100,000, so his quantum merit as the client is $100,000, because otherwise we were going to get a different contingent fee, right? That's the argument that we made before, yes, Your Honor. And if it's quantum merit as to what service he provided to Crockett, it's the referral. And the referral is a third of $500,000. And so it matters enormously when we say value of the service, value to whom? Now, if it's only value to Crockett, well, he gets his one-third referral fee. But if we're talking value to Crockett, he just cost Crockett $100,000 by negotiating down the fee. And Judge Proe doesn't seem to have worked his way through the question value to whom. Well, I think Judge Proe was attempting to address the issue, and he didn't want to give any value at all for the referral itself. He said he did. He said that he did. But if you look at his argument, he did exactly he had failed to give that. The Ninth Circuit said that Judge Proe had clearly erred in failing to account for the value to Crockett of the referral. Itself. That's right. That's exactly what we wrote. In response to that, Judge Proe said, well, the original award of quantum merit, attorney's fees, was adequate to reasonably compensate Fitzgerald for the value of the service he provided to the case. That wasn't the issue that was sent back. He follows that, then, by saying on reconsideration and given evidentiary record of services performed by Fitzgerald through the Nostro case, this Court rejects the argument that the Ninth Circuit accepted, which was that there was a value to the referral itself. So the judge specifically said he's still considering the value to the case and not the value to Crockett of the referral itself. I'm wondering whether value to the case is the right measure. I'm also wondering, incidentally, whether we can consider it because law of the case prevents us from just redoing the first decision. Basically, you've got $166,667 of value to Crockett and $33,334 of value to the client. And the value to the client is $166,667, which adds up to $200,000. That means the contingent fee that Crockett got, 500, they get to keep 300 of it, you get 200 of it. Have I got that right so far? That's correct, Your Honor. And that equals two components, the value to the client and the value to Crockett. That's correct, Your Honor. Okay. And the value to the case. So we really need value to the case in order to get there. The value to the case was already affirmed by this Court. The value to the case, that's weird. I mean, what do you mean case? No, let me talk. Value to the case, that's not quantum merit. The value we do in quantum merit is how much, I'll imagine I'm the plaintiff, how much value have I conferred on someone? Correct. Not the case. Correct. So who's the someone? The someone in this case was the plaintiff. There was a value conferred upon the plaintiff in the amount of $100,000, which was then divided. We argued about that, and that was affirmed by this Court. But the referral fee, I don't know if that's value provided to the plaintiff. I'll go back to Judge Kleinfeld's point about ethics. It's no longer ethical. But I don't think he was helping her one bit by saying, I'm going to send it off to this guy, or maybe, you know, his time for looking it up in the phone book. But the value that he provides to her for the referral, I mean, that's the reason why there was an ethical prohibition against it. It's a kickback. Well, Your Honor, there isn't an ethical obligation against it. And this Court already determined that the case that, as a matter of law, Judge Proe had failed to account for the value to Crockett of the referral and that there was a value to that. There was a value to Crockett. You don't understand what I'm talking about. I do, Your Honor. And this was sent back to determine that value. Judge Proe didn't determine that value. Now, we can't do that. Counsel, help me on this. I understand the general points. We both have read the briefs carefully because the case is interesting. Here's what I'm thinking here. Referral is okay. The old ethics arguments were it's unethical to charge or receive a referral fee because it's merely going to lead the attorney to whom the case is referred to charge the client more in order to cover the cost of the referral fee. The argument the other way was if you don't let clients charge and receive a referral fee, lawyers will keep cases that, for the good of the client, they should have referred. And the responsibility of referral is not merely the work you do finding a good lawyer, it's also taking the malpractice liability in case you make a bad referral. That was the arguments, and they've been resolved in favor of charging and receiving a referral fee. So I'm okay with that. When I look at the value here, one way to calculate it is that the value to the client was $100,000 or the $100,000 saved her on the fee. The value to the Crockett Law Firm was the $166,667, that's the usual and customary referral fee, the market has said that's what a referral is worth, minus the $100,000 that Crockett lost because of Fitzgerald's very capable work on behalf of his client in knocking down their fee from 40% to one-third. That yields a net value to Crockett of $66,667, and a net value to both Crockett and the client of $100,000 rather than $200,000, as the quantum merit value adding up the value to both of the people who receive value from Fitzgerald. Why shouldn't the quantum merit award be $100,000 rather than $200,000? Well, Your Honor, that's one way that it could have been done in the discretion of the court. Judge Proh refused to give any value. I know. Judge Proh just didn't give value, but I ask you a different question. I understand. And I understand the mathematics to that and that that would be one reasonable way of resolving this. I believe that the full amount, another reasonable way of resolving this would be the full amount. Tell me, why should it be $200,000 rather than $100,000? I mean, Judge Proh just plain did not give any value for the referral as far as I could see. He only gave value for the benefit conferred on the client. If we're talking quantum merit, the minimum value of the case is $166,000 because that's the value of the referral, and that's the value to Mr. Crockett of that amount. You not only got a good lawyer for your client, you got a good lawyer at a better rate than the good lawyer ordinarily would have charged for your client. Exactly. It makes it worth more to your client, but less to the lawyer you gave the case to. It may be worth less to the lawyer, but the referral was worth at least $166,000. Why is it worth that if part of the deal on the referral was they have to discount their rate? Well, that was a part of the negotiation with the contract, which then, of course, we've had the contract arguments and we've lost. So that's why we're not under the contract, which was a part of that negotiation. But still, if you take that out of it entirely and it's just a referral, it's worth $166,000 on the referral alone. And if we're looking to the contract not as an enforceable obligation, but as a reasonable guess as to how much the referral was worth to Crockett, he said 50%. That's correct, Your Honor. Even after his fee had been reduced. That's correct, Your Honor. Yeah. That was a little different, though. I think that wasn't a referral fee. I think that was a fee on the assumption that the lawyers would work together through the case because Fitzgerald's secretary's daughter was the widow. So it wasn't just for referring. It was for efforts. Usually there's a lot of client hand-holding as well as depositions on the East Coast, that sort of thing. That's exactly correct, Your Honor. Mr. Fitzgerald was supposed to be involved and that was part of the reason. He didn't have to do that work because he got fired. He didn't have to do that work. He was doing that work and he got fired, and that's true. And that was the contract argument that we lost. He did some of the work, but then he got fired, and that's why you get quantum error. So maybe we're back to the ordinary and customary fee for a referral might have been, on this case, despite the fact the fee was knocked down by $100,000, might have been $33,000. It might have been one-third. Yeah, yeah. Okay. I got it. Thank you, Your Honor. Sure. May it please the Court. Counsel kept saying there was some kind of approval of the $33,000 by the Ninth Circuit before. There was no approval. The conclusion of the opinion of the Court was because we find that the district court did not properly account for the value of the referral, we vacate the award and remand for recalculation. Well, there was a sentence after that. The way I read it was, although the district court, I'm reading the sentences you did not refer to, although the district court recognized that Nostro benefited from Fitzgerald's careful selection of a local attorney, it failed to account for the value of the referral. Instead, it focused solely on the value of the reduced contingent fee. And we agreed that the reduction conferred a benefit upon Nostro, but we said that the district court erred in failing to account for the value of the referral to Crockett. Accordingly, we vacated and we remanded for recalculation. That's the sentence you read. And then we added a sentence. We further note that a court may also consider established customs when calculating an award under quantum merit. Now, I took that to be the established custom of you take a case on a referral with a one-third contingent fee, you pay the referring attorney one-third of your third. And I think that's what our previous decision meant, and it looked like the district judge just didn't do what we said to do there. Can you show us that the district court complied with the mandate? Yes, sir. And, of course, what the court said with respect to customs was established customs. It was not what Mr. Crockett did himself. So what was the evidence of the established custom? There was none. There was an opportunity afforded below. The appellants did not avail themselves. They submitted that. They submitted none. They didn't put in any evidence of the one-third of a one-third established custom? They did not. No declaration that ordinary referral fee is one-third? None whatsoever. They were afforded an appropriate opportunity. Did not. So, therefore, it was not – I'm not aware that it's an established custom. And I might say this with respect to the payment of referral fee. To the extent it is now permitted under Nevada statute, it requires written consent by the client. There is no such written consent here with respect to the payment of any referral fee. I heard you use the word now. Was the written consent required at the time of this agreement? At all times. Okay. At the time it required that the division is in proportion to the services performed. That was up until 2006 when it was amended. And the client is advised in writing. But, look, they had it written. They didn't. That's an ethical requirement so that the client knows what's going on. And there's no breach of that ethical requirement here because there was, in fact, a written agreement for 50 percent. That strikes me as a red herring argument. That's correct. And that was based upon, as Your Honor indicated, that there would be full participation in the case by Mr. Fitzgerald. Sure. The reason we do quantum merit is the contract wasn't performed. That's correct. But the contract was revealed to the client. Yes. The client signed that one. And that was. Yeah. So in what way, when I ask you did the district court violate our mandate by not awarding a nickel for the value of the referral according to established customs, the answer is. I will explain. There was no evidence of what the established customs were. So as far as the evidence shows, there is no established custom of any referral  That's correct. Okay. And may I point out that the Webster's Third International Dictionary has a 1B definition. The first one deals with intricate matters. The second one says to reckon by exercise of practical judgment rather than by strict mathematical process. That's calculate. And what the court did before. Excuse me. What's the word you were just giving me the definition to? Calculate. Correct. May I correct it? By exercise of practical judgment rather than by strict mathematical process. See, I always thought that if I can price something with simple arithmetic, it's safer than just sort of guessing what it ought to be. Like if I want three of a $100 item, $300 is the price. And I don't have to worry about somebody saying, well, I think it's maybe three and a quarter. In this particular case, of course, when Judge Crowe originally awarded $33,000, he was not giving. It was just a number that he arrived at. Was there any evidence? Oh, you're challenging the 33 as well? No, I'm not. There isn't. Yes, I am. I mean, that's not an award. That was vacated. He said the 33 was one-third of the $100,000 that Fitzgerald saved his client. That's correct. Yeah, because maybe you didn't mean to suggest this when you said it was just a number that he arrived at. He wrote eight pages telling us why he'd arrived at that. Look, we're lawyers too. I did plaintiff's PI. It's not like contingent fees are a foreign language to us. It's kind of simple. He got his client $100,000 in benefit. He charged one-third. Well, if that additional one-third came off to Crockett, that is a real double dip against him. He lost $100,000 the first time. Now they're adding insult to injury. Well, what we're bound by, as you are bound by and as Judge Crowe was bound by, the previous opinion of this Court. It's a published opinion. And it says that the Court, the district court has to award something for the value of the referral and not just the value, which the district court already awarded, for the value to Nostro. Respectfully, the Court said to recalculate what you should include. Now, what I'd like to show you, Your Honor, now, Your Honor. Are you saying that we did not approve the 33? That's correct. That was vacated. Well, we vacated the judgment. We vacated the award. We affirmed in part, vacated and remanded in part. But the conclusion specifically vacated the award. But I thought the only thing we were critical of was not giving anything for the referral. Is there language here disapproving of one-third of the $100,000? Clearly. Show me where. I've got it right in front of me. In the conclusion. We vacated the award. We vacated the award. We vacated it because it was too low. Now, if I'm misreading that, point to the language. I've got it right here. Let me, if I may. If I may, Your Honor. You asked me a question earlier, and I haven't gotten to it. I'm going to show you in the record things that Judge Crow was aware of.      I want you to show me. I want you to show me. I want you to show me. I want you to show me in our prior decision where we indicated that the $33,000 was wrong. Vacating. That was the only award that was before the Court. And they said we vacated and remanded for recalculation. They said to Judge Crow, take another look at this. And he did. He explained what he did. And I'm going to, with an, your earlier question was, tell me what, something to do with quantum merit, value of the award, of the referral. And I will show that to the Court. Let me say this. It looks to me like the only sentence that speaks to the 33 is this sentence saying, we agree that the reduction, that's the reduction in the 40 percent contingent fee, we agree that the reduction conferred a benefit upon Nostro. The district court, however, erred in failing to account for the reasonable value to Crockett of the referral itself. And the way I read those two sentences were the 33 is okay, but it should have been more because it didn't include anything for the referral. Respectfully, I understand that. How am I misreading it? What other language is there that I missed here? The only award was $33,000. And the Court said we vacate that and go back and take a fresh look. Well, of course we vacated it because we said it was wrong. We said it was wrong. It was too low. Here's the reason as to why it's wrong. Respectfully, when he said that. Do you think we vacated it because we thought that the judge gave Fitzgerald too much money? The answer, no, no. But I think the Court did more than that. The Court said go back and take a whole look at this and consider the referral specifically. And what I am saying is I can show by the record. That's not exactly what it said. That the referral was based upon fraud. It said remand for recalculation. And it said that the original award, quote, failed to account for the value in and of itself of the referral. Let me, may I? This is an earlier question you gave me as to why, what was the value of the referral used under quantum merriment. If the Court will oblige, I will show you that the referral was based on outright fraud. May I? Say more. Thank you. This is Mr. Fitzgerald's testimony. So I was able to give him, referring to Crockett, because of my expertise, so many details on how good a case that was. So, yes, my expertise played a major role. It told him it was a very good case worth millions of dollars and made him gladly willing to reduce his fee. Oh, I remember this argument in your brief. He puffed the case. He told us it was a better case than it was and that's fraud. I cannot imagine that a good medical malpractice lawyer would take his notion of how good a case it is from the referring attorney. You take your notion of how good the case is by evaluating the case. But may I tell you what happened? And what you knew perfectly well was it's a guy who had cancer and he died during a diagnostic procedure. The bad part of the case for you was he already had cancer. The good part of the case for you was he didn't die of cancer and he didn't die of treatment for cancer. He died of a diagnostic procedure. You look for liability, damages, collectability. Your damages are pretty good, middle-aged man. Your collectability is excellent because you've probably got a malpractice injury. Your liability is kind of iffy. And that's it. And I don't see how. That's not the whole story, Your Honor. May I? Five days after he made that statement. You're saying you were fooled by Fitzgerald tricking you. But let me tell you the extent of it. Mr. Crockett would never have taken this case. He didn't win it based upon the value or merit of that case. He won it by good lawyering. He found out that they had somehow or other the x-rays disappeared with respect to the time of the puncture. And as a result, they. He settled it for a million and a half? That's correct. He didn't win it at trial. He settled for a million and a half? That's correct. But it was a tremendous amount of work. What it was was some spoliation. The hospital said, gee, we don't know where the x-rays are that would show our malpractice. They had x-rays, but certain ones were. It was all done on. It's all timed. And apparently at the point in time that the needle entered the medial statum, those few x-rays were gone. They disappeared. It's clear.  Sounds like a pretty good case. May I? May I? Five days after that statement I made before when he called Mr. Crockett, his daughter had done a report that he requested. And the report said, thus, Michael Nostro most likely had a less than 50 percent chance of survival, and it was reasonable to expect that this medial estinomass was malignant. Five weeks later, he sent the file to Mr. Crockett. He did not include this document. Now, what he said in the letter, this is five weeks after that. Did you sue him for fraud? No. Did you counterclaim for fraud? Well, we did. Well, my client. I mean, you just told us he fraudulently induced us to take the case. We didn't find out about this until a mediation. My client went back to New York. With fraud, you can sue within the statute of limitations period after discovery. I didn't want this case to go away. It should be put to bed. There have been four reported decisions in this case. I would feel much better about where this case now is if Judge Proe had said something, well, you know, this was kind of a crummy referral, and it's a crummy referral because then he might have agreed with you and said, and therefore the value of the referral is stinko. But he doesn't say anything like that. Let me show you that he does. His questioning, if I may. No, no. I read his order. I read Judge Proe's order. He says nothing about it. But let me. I understand. May I? I can't see how he could. A case that settles for a million and a half without trial, you get a half million dollar fee. What's stinko about that? Some cases. That kind of case sent my kids to fancy schools. Medical mal is no pleasure. This is a case Mr. Crockett testified is undisputed he would not have taken if he knew it was not a wrongful death case. It was merely a loss of chance of survival. But may I go on? He sends the file that he has to Mr. Crockett. He does not put his daughter's report in there, and he says this. Michael Nostro was previously diagnosed as stage 4 nasopharyngeal cancer patient, but since February 20th, 2000, was cancer free with no recurrence. He was doing fairly well and was due to return to work in February 2001. Judge Proe. Make that argument to Judge Proe and have Judge Proe put it into order. Before we go to that, go back to page 69. It's the paragraph Mr. Lionel read to you that Nostro was previously diagnosed stage 4 nasopharyngeal cancer, but since February 2001, is cancer free with no recurrence. He was doing very well and due to return to work February 2001. By this time, you did have your daughter Megan's report of July. It seems a bit inconsistent. How do you square that with the report? So what? No plaintiff's medical malpractice lawyer would rely on a lawyer telling them the case is really good. They'd look at the case themselves. They'd get the medicals themselves and evaluate it for purposes of trial and settlement based on the medical information and their medical experts and their own medical expertise. He ultimately did that, and he had that problem. He went down to the California hospital and watched these surgical procedures, and that's how he came upon it. All his lawyering is what made this case settled. And then all the time you get cases that are referred to you and they turn out to be better or worse than the referring attorney thought or said. So what? But you don't take a case based upon these representations. You take a case if you may get a half-million-dollar fee. Well, may I continue just one moment, please? The witness, Megan's report, he says, by this time you had your daughter's report, it seems a bit inconsistent. How do you square that with what the report contained? Well, Megan's report was preliminary, Mr. Fitzgerald said, between the time of the report and the letter of August 13th. What additional information did you, yes, this, have to indicate that Mr. Nostra was cancer-free and was in a less than 50 percent survival? Right. I don't recall when I wrote the letter if I remembered Mr. Megan's report to court. Did you discuss that report, that part of the report, Mr. Crockett? No, Your Honor. At this important time before there was any retainer agreement? Isn't that true? Isn't that true? A signed retainer agreement? Yes, correct. What was the date of the signed? I'm sorry. This is my cross-examination, and there was no retainer. I'm done. All right. My view is that the conduct of Mr. Fitzgerald was wrong, that Mr. and it's undisputed Mr. Crockett would never take this. So when you look at the value of the referral, I say it had no value or minimum value and that Judge Crowe, by repeated questioning, was aware of this thing. Thank you. My time up. I'd like one minute, but I'd particularly like you to respond to the statement that your client put no evidence in as to the custom of referral fees in Nevada. Your Honor, that's the only issue that I wanted to respond to. Mr. Crockett's custom of paying a one-third referral fee is not only always a part of this, it has never been disputed until today. This is the first time we've ever heard that that was there. How do we know it's there? Where should we look? It's in every pleading. It's in every motion paper. It was testified to at trial. Do you mean that the Crockett firm conceded that that was the standard? Mr. Crockett conceded from the beginning that it was a one-third. Where is it? Just give us a reference so we can look at it. Your Honor, it was their argument that he, from the beginning, there are many of his statements, and unfortunately, I don't have that at my fingertips. But if you look at page 37 of their answering brief, you'll find the concession there that Crockett's custom is to pay one-third. Page 37? Page 37 of their brief. They don't argue that it's not the custom. They argue, I'll let you get there, the very first full paragraph there. There is no mention, however, of Crockett's custom of paying one-third referral fee anywhere in this Court's ruling. So they continued to argue. They never, ever said Crockett. They don't concede that there is, in fact, such a custom. No, but they don't argue that there isn't. And they won't argue in their brief anywhere that there isn't. And you will find in, and I don't have it at my fingertips, but if you look at any of the statements from Mr. Crockett from the beginning, his defense has always been, I offered to pay him a one-third because that's what I always pay. That's what I'd like to see. Where is it? It's repeated throughout the record, Your Honor. Where is it? I can't tell you the exact thing here, but I can tell you that you would find it in any of the pleadings and all of the motion papers. It has always been undisputed. Okay. If it's there, we can find it. Thank you, Your Honor. Thank you very much. Crockett and Myers v. Napier, Fitch, Sherald and Kirby, submitted for decision. And that's it for the day and the week. Thank you very much. All rise.
judges: Hug, Kleinfeld, Fletcher